IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL L. PHELPS,

                      Plaintiff,

    v.                                                    OPINION and ORDER

KILOLO KIJAKAZI,
Acting Commissioner of                            21-cv-184-jdp
Social Security,[1]

                      Defendant.

---

Plaintiff Michael Phelps seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Phelps not disabled within the meaning of the Social Security Act. Phelps challenges the decision of the administrative law judge (ALJ) Ahavaha Pyrtel on four grounds: (1) the ALJ failed to adequately develop the record because she did not include two consultative examinations that were considered as part of a subsequent successful application for benefits; (2) in the alternative, the reports from the consultative examinations are new evidence that must be considered on remand; (3) the ALJ improperly discredited Phelps's testimony about the severity of his symptoms; and (4) the ALJ improperly discounted the opinion of Dr. Jeffery Andert, a medical expert who testified at a prior hearing on Phelps's application for benefits.[2]

---

[1] The court has updated the caption pursuant to Federal Rule of Civil Procedure 25(d).

[2] Phelps also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But as Phelps acknowledges, this court has rejected that argument multiple times. *See Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). Phelps cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

The court will affirm the commissioner's decision. As for the consultative examinations, Phelps's counsel did not object to the administrative record at the hearing, and the ALJ wasn't required to search for more evidence. Phelps hasn't shown that the examinations were unavailable to him at the time of the hearing, so they are not new evidence. As for Phelps's subjective complaints, the ALJ adequately explained why she did not fully credit Phelps's testimony about them. As for Andert's opinion, Phelps has not identified any limitations in Andert's opinion that the ALJ should have included in Phelps's RFC. The RFC is largely consistent with Andert's assessment of Phelps's abilities, and the ALJ adequately explained why she gave little weight to some parts of Andert's opinion.

BACKGROUND

Phelps's appeal has a lengthy procedural history that spans ten years and involves two separate applications for benefits. Because of multiple appeals involving the first application, its evaluation overlaps with the evaluation of the second. That history provides context for the issues in this appeal, so the court will summarize it here.

Phelps made his first application for benefits in May 2011, alleging disability beginning in October 2010. R. 2181.[3] In 2013, an ALJ determined that Phelps was not disabled, and Phelps appealed to this court. R. 1021. The parties stipulated to a remand in May 2015. On remand, a different ALJ determined that Phelps was not disabled. R. 1784. Phelps again appealed to this court, and in August 2017, the parties again stipulated to a remand. Yet

---

[3] Record cites are to the administrative transcript located at Dkt. 11.

another ALJ issued a third unfavorable decision in August 2018, and Phelps appealed to this court a third time. R. 1702.

While Phelps's third appeal was pending, Phelps filed a second application for disability benefits, alleging an onset date of March 2016. *See* R. 2317. The Social Security Administration approved Phelps's second application for benefits in September 2019. Dkt. 19-1. The agency noted that because Phelps had a previous denial dated August 20, 2018, "the earliest date that we can establish the onset of disability is 08/21/2018, the day after the denial decision." Dkt. 19-1, at 3.

Meanwhile, this court decided Phelps's third appeal, remanding Phelps's case for further administrative proceedings. R. 2308; *Phelps v. Berryhill,* 18-cv-874-jdp, Dkt. 20. Phelps had a hearing before a fourth ALJ, Ahavaha Pyrtel, in August 2020. In October 2020, the ALJ issued a decision finding that Phelps was not disabled from his alleged October 2010 onset date through August 20, 2018. R. 2181–99. That decision, involving Phelps's alleged disability from 2010 to 2018, is now under review by this court.

ALJ Pyrtel found that Phelps suffered from several severe impairments: status post-repair, hiatal hernia; obesity; depression; anxiety; and personality disorder/body dysmorphic disorder. The ALJ also determined that Phelps suffered from several nonsevere impairments: gastroesophageal reflux disease, substance abuse disorder, and an unspecified "cognitive disorder." R. 2185.

The ALJ determined that Phelps did not meet the criteria for any listed disability. R. 2186. The ALJ determined that from the alleged onset date through August 20, 2018, Phelps had the residual functional capacity (RFC) to perform light work with some non-exertional limitations to address Phelps' mental impairments. Specifically, Phelps was able to perform

3

simple, routine, and repetitive tasks; he could not perform at a production rate pace; he could occasionally interact with supervisors and coworkers but could never interact with the public; and he was able to tolerate few changes in a routine work setting. R. 2188.

Relying on the testimony of a vocational expert, the ALJ concluded that Phelps could perform a significant number of jobs available in the national economy, including as a routing clerk, a collator operator, and a router. The Appeals Council denied review, so the ALJ's decision became the final decision of the commissioner, which Phelps has now appealed.

ANALYSIS

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A.  Consultative examinations**

Phelps contends that he is entitled to a remand because the administrative record did not include the results of two consultative examinations performed in 2019 that were part of the record in Phelps's second application for benefits. When Phelps's second application was granted in September 2019, the notice of award stated that the administration had considered consultative examinations from Dr. Jesse Frey and Dr. Brian Allen that were performed in May and June 2019, respectively. When Phelps's original application for benefits was remanded to

4

the ALJ in 2020, the reports of the examinations from Frey and Allen were not part of the administrative record. In its remand order, the Appeals Council stated that the ALJ's review was limited to the period prior to August 2018, unless the decision in Phelps's second application awarding benefits after that time was reopened. R. 2317.

Phelps contends that "it is probable" that Frey and Allen's opinions "provided findings evidencing disability before August 21, 2018." Dkt. 18, at 25. Phelps says that the ALJ would have known about these reports and the evidence was available in the computer system maintained by the administration. *Id*. at 19. Phelps contends that he is entitled to a remand on two grounds: (1) the ALJ had a duty to ensure that the reports were in the administrative record; and (2) the reports are new evidence.

Phelps did not submit Frey and Allen's opinions to this court. Phelps contends that he "would have a difficult time obtaining the reports at this time," Dkt. 18, at 26, so he has asked the court to order the agency to "supplement the record" with the reports of the examinations, Dkt. 16. The court will begin with Phelps's motion to supplement the record, and then consider Phelps's arguments for why the reports require remanding the case.

1. **Motion to supplement the record**

Phelps does not explain what he means when he asks that the agency "supplement the record" with Frey and Allen's reports. But the court takes Phelps to be asking for one of two things. First, Phelps may be asking the agency to add the reports to the administrative record so that the court can now consider them in determining whether the ALJ's decision was supported by substantial evidence. But this would violate a basic principle of administrative law: "As a general rule . . . review of an agency's decision is confined to the administrative record." *Little Co. of Mary Hosp. v. Sibelius*, 587 F.3d 849, 855 (7th Cir. 2009). A reviewing

5

court may not reverse an ALJ's decision based on evidence that was never presented to the ALJ. *Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). So the court cannot consider Frey and Allen's evaluations to determine whether the ALJ's decision must be reversed.

Second, Phelps may be asking the agency to produce the reports to allow the court to determine whether they are new evidence that an ALJ could consider on remand under sentence six of section 205(g) of the Social Security Act. The provision allows the court to remand a case if there is new material evidence and the claimant shows good cause for failing to incorporate that evidence into the record. The court could consider Frey and Allen's reports for that purpose. *See Eads,* 983 F.2d at 817. But Phelps provides no argument why this case falls outside "the general rule that discovery outside of the administrative record is inappropriate." *Little Co. of Mary Hosp.*, 587 F.3d at 856. Nor does he provide any authority that it is appropriate to order the administration to produce the reports under these circumstances. Phelps does not explain why he would be unable to obtain the reports without a court order or why he did not submit them during the proceeding in the agency. *See Eads*, 983 F.2d at 817 ("Eads could have submitted the doctor's letter to the district court as a basis for requesting [a sentence six] remand. He did not do that either."). His request that the court order the commissioner to produce the reports will be denied.

2. **Failure to develop the record**

Phelps contends that the ALJ failed to develop the record to include the results of Frey and Allen's consultative evaluations. An ALJ has a duty to develop a full and fair record. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). But an ALJ is not required to supplement the record if it contains adequate information for the ALJ to render a decision. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018). Here, the ALJ elected not to reopen the decision in Phelps's

6

second application finding Phelps disabled after August 21, 2018. The question before the ALJ was whether Phelps was disabled prior to that date. Phelps has not shown that the record was inadequate to answer that question. Phelps admits that he has not reviewed Frey and Allen's reports, so he can only speculate about what the reports say. Phelps does not explain why the ALJ needed reports from evaluations conducted in 2019 to determine whether Phelps was disabled between 2010 and 2018.

The ALJ could reasonably conclude that the record was complete because Phelps's counsel did not object to the record at the hearing. Although an ALJ has a duty to develop the record, a represented claimant "is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Here, counsel for Phelps stated at the administrative hearing that he had reviewed the record and had no objections to it. R. 2218. "[I]t was reasonable for the ALJ to proceed on a record that [Phelps's] counsel was satisfied with." *Harris v. Saul*, 835 F. App'x 881, 885 (7th Cir. 2020); *see also Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021) ("[Plaintiff] does not explain why the ALJ should have investigated further after receiving [counsel's] assurance" that the record was complete). If Phelps wanted the ALJ to consider the 2019 evaluations in reaching her decision, he should have submitted them into evidence or objected to the record at the hearing.

Phelps resists this conclusion, for three reasons. First, Phelps says that his counsel, Dana Duncan, was "unaware of the existence of [the] consultative examinations." Dkt. 28, at 10–11. Duncan provided an affidavit to that effect. Dkt. 19, ¶ 22. But Phelps himself was almost certainly aware of the examinations; presumably, he participated in them. Moreover, Duncan states in his affidavit he "received notice of consultative examinations on May 13, 2019." Dkt. 19, ¶ 12. He also states that his office received a copy of the letter approving Phelps's

subsequent application for benefits, which disclosed the existence of the examinations, in September 2019. *Id.*, ¶ 16. (The letter itself states that a copy was forwarded to Duncan. Dkt. 19-1, at 3.) Although not stated explicitly, Duncan's affidavit implies that he did not have personal knowledge of the consultative examinations because he did not review documents related to Phelps's subsequent application: he states that "the initial application phase is handled by administrative staff" and that "counsel's staff was working from home due to the pandemic and communication regarding cases was problematic." Dkt. 19, ¶¶ 14, 23. In any case, whether Duncan himself actually knew about the examinations is not relevant. Phelps provides no authority that an ALJ has a duty to ensure that claimant's counsel is subjectively aware of potentially relevant evidence, so he hasn't shown that the ALJ erred by relying on Duncan's representation that the record was complete.

Second, Phelps says that the Appeals Council directed the ALJ to evaluate Phelps's subsequent application for benefits. Dkt. 18, at 25. But that's not what the Appeals Council did; its remand order specifically states that the ALJ's review was limited to the period prior to August 2018 unless the decision to award benefits on Phelps's subsequent application was "reopened and revised in accordance with applicable regulations." R. 2317. And at the 2020 hearing on Phelps's initial application, counsel for Phelps affirmatively stated that he was "not asking to have the most recent application reopened." R. 2221. Accordingly, the ALJ concluded that there was no reason to reopen the determination that Phelps was disabled beginning August 2018. Phelps provides no argument why the ALJ was obligated to consider the record from Phelps's second application under those circumstances.

Third, Phelps contends in his reply brief that the agency's internal guidelines required the ALJ to consider the record from Phelps's subsequent application for benefits. Specifically,

8

Phelps cites a section of the agency's Hearings, Appeals, and Litigation Law Manual ("HALLEX") which provides that "[i]n some cases, it will be necessary for the [ALJ] to review a prior claim(s) file in order to fully adjudicate a current claim." HALLEX § 1-2-1-13(A). This argument fails at the outset, because Phelps did not raise this argument in his opening brief; although he cited a different section of HALLEX for the general principle that an ALJ has a duty to develop the record, he did not argue that the manual required ALJs to consider prior case files. Dkt. 18, at 27–28. Accordingly, the argument is forfeited. *See United States v. Cruse*, 805 F.3d 795, 818 n.7 (7th Cir. 2015) (arguments raised for the first time in a reply brief are waived).

But the argument also fails on its merits, because Phelps hasn't shown that the ALJ failed to comply with the agency's manual. The portion of the manual Phelps cites does not impose a blanket obligation on ALJs to consider the record from previous applications; instead, it states that consideration of a prior claim file may be necessary if "the ALJ determines" that at least one of two circumstances is present: (1) there is a need to establish a longitudinal medical history; or (2) the impairment "is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim." § 1-2-1-13(B)(2). Phelps doesn't explain why it was error for the ALJ to conclude that neither circumstance was present here.

Phelps hasn't shown that the record before the ALJ was inadequate to allow her to reach a decision on whether Phelps was disabled prior to August 2018. The ALJ did not breach her duty to develop the record, so Phelps is not entitled to remand on that ground.

### 3. Remand for consideration of new evidence

In the alternative, Phelps contends that the consultative reports are new evidence that require remand. Remand for consideration of additional evidence is warranted only if (1) the evidence is new; (2) the claimant had good cause for failing to present the evidence to the ALJ; and (3) the evidence is material. *Schmidt v. Barnhart*, 395 F.3d 737, 741–742 (7th Cir. 2005).

Phelps hasn't shown that Frey and Allen's reports meet any of these requirements. Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (internal quotation marks and citation omitted.) Phelps doesn't dispute that the reports were in existence at the time of the August 2020 administrative hearing. But Phelps contends that the reports were not available to him because the reports "were in the custody of SSA and not proffered to [Phelps]." Dkt 18, at 29.

That argument fails. Under the Privacy Act, Phelps was entitled to view the consultative examination reports upon request to the agency. *See* 20 C.F.R. § 401.55(b)(1); *Program Operations Manual System* (POMS) GN 03340.001(A), (C). The examinations were disclosed to Phelps and his counsel in September 2019, nine months before the August 2020 hearing. *See Schmidt,* 395 F.3d at 743 (evaluation report was not new because it "predate[d] the administrative hearing by seven months."). Phelps does not dispute that he could have requested the reports at any time before the hearing. And even if Phelps would have "experienced some difficulty in obtaining the [] records, [] that is not the same as claiming that they were not available." *Williams v. Colvin*, No. 14 C 5075 2015 WL 5227736, at *9 (N.D. Ill. Sep. 4, 2015).

For similar reasons, Phelps has not shown good cause for failing to submit the reports. To demonstrate good cause, a claimant must show "sufficient reason for failing to incorporate the evidence into the record during the administrative proceeding." *Sample*, 999 F.2d at 1144. The only reason Phelps provided is that his counsel did not know that the records existed. But the administration did not hide the reports from Phelps or his counsel, and Phelps cites no authority that counsel's lack of knowledge is good cause for failing to present evidence.

As for materiality, evidence is material only if it is (1) relevant to the claimant's condition during the time period under review and (2) there is a reasonable probability that the evidence would have changed the ALJ's decision. *Schmidt*, 395 F.3d at 742. Phelps hasn't shown that the reports from 2019 are relevant to whether Phelps was disabled prior to August 2018, so he hasn't shown that they would have changed the ALJ's decision on that issue. Accordingly, Phelps is not entitled to remand under sentence six.

**B. Subjective complaints**

Phelps contends that the ALJ erred in assessing his subjective complaints about the severity of his mental impairments. An ALJ's evaluation of the claimant's testimony is entitled to deference because the ALJ is in a special position to see, hear, and assess witnesses. *Murphy v. Colvin*, 759 F.3d 811, 815–16 (7th Cir. 2014). The court will overturn the ALJ's assessment of the claimant's testimony only if it is patently wrong. *Id*.

Phelps testified during the administrative hearing that he is unable to work due to his forgetfulness, poor focus, and difficulty interacting with others. He stated that he could not perform tasks involving more than three steps; he lashes out at people; and he has difficulty interacting with others, including difficulty interacting with strangers and crowds. R. 2190, 2192.

The ALJ offered the following reasons for discounting Phelps's testimony about his mental impairments:

- There were few recorded statements to his treatment providers about his difficulties maintaining pace or working with others, or that he had lost jobs due to those issues. R. 2192.

- Phelps was not always compliant with treatment recommendations. R. 2192. Phelps would sometimes refuse to try a medication, and he would often try a medication for only a few weeks, which was not long enough for the medication to become effective. *Id.*

- Phelps reported that his favorite activity was going to the Noah's Ark water park, which had large crowds. Phelps also stated that he enjoyed group activities, including playing pool and going on a picnic. R. 2192.

- During the period at issue, Phelps was passing his classes at MidState Technical College and had tested in the normal academic range on all areas except for math. R. 2193.

Phelps disputes only two of those reasons: (1) a lack of statements to his treatment providers about his difficulties working with others; and (2) Phelps enjoyed going to Noah's Ark and playing pool. That leaves two unchallenged reasons for discounting Phelps's testimony about his subjective symptoms.

And Phelps has not shown that either of the reasons he disputes warrants remand. As for a lack of statements to treatment providers about workplace conflicts, Phelps contends that there are multiple reasons that a person may neglect to mention certain issues or situations to a treatment provider, and that claimants "many times lack insight into the nature and extent of their condition." Dkt. 18, at 37. That may be true, but it doesn't show that the ALJ erred. The ALJ was entitled to consider the extent to which Phelps's statements were consistent with the rest of the record. *See Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). And it was reasonable for the ALJ to infer that Phelps would have told his providers more about his difficulties getting along with others at work if that was a significant issue.

As for Phelps's social activities, Phelps contends that the record does not show that his favorite activity was going to the water park. But even if going to the waterpark was not his absolute favorite activity, the records cited by the ALJ show that Phelps was excited for visits to the water park and that the water park was a "calm spot" for him, R. 1478. So it was reasonable for the ALJ to discount his testimony about his difficulties interacting with crowds on that ground. The ALJ also noted that Phelps enjoyed playing pool. Phelps contends that the games of pool are not relevant to whether he can interact with others because those games took place during his stay at a group home. But nothing in the record suggests that Phelps was forced to play pool with others at the group home. His enjoyment of a communal activity is still evidence that he can get along well with others, so the ALJ didn't err by considering it.

Phelps also contends that the ALJ failed to address how his testimony was consistent with other evidence in the record, including that he had been diagnosed with a personality disorder and some general statements from treatment providers that he would have moderate difficulties in working with others. Dkt. 18, at 34–35. Although an ALJ does not need to discuss every piece of evidence in the record, an ALJ cannot ignore an "entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Phelps has not identified any line of evidence that the ALJ ignored. Elsewhere in the decision, the ALJ concluded that Phelps's personality disorder was a severe impairment. And the ALJ assessed all of the medical opinions in the case and acknowledged that some medical professionals opined that Phelps may have difficulty working with others. R. 2193–95. The ALJ did not expressly discuss whether that evidence was consistent with Phelps's testimony. But an ALJ's opinion must be read as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004). Here, the ALJ expressly considered the evidence Phelps cites. And the ALJ

ultimately assigned Phelps significant restrictions to address his limitations in interacting with others: she said that Phelps could never interact with the public and could tolerate only occasional interaction with coworkers and supervisors.

The ALJ adequately explained why she did not fully credit Phelps's testimony about the severity of his symptoms. Phelps has not shown that the ALJ's analysis of his subjective complaints was patently wrong, so he is not entitled to remand on that ground.

## C. Medical opinions

Phelps contends that the ALJ erred in her assessment of the medical opinions in this case. An ALJ must evaluate all medical opinions applying several factors including supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520c(b) and (c). But the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a).

Phelps identifies only one discrete error in the ALJ's assessment of the medical opinions: he contends that the ALJ should have adopted additional limitations on Phelps's ability to work with others that were identified by Dr. Jeffery N. Andert, Ph.D., a non-examining medical expert who testified at Phelps's July 2018 hearing. Andert opined that Phelps had marked limitations in social functioning; he could perform simple, repetitive tasks but was precluded from fast-paced or assembly line work; that he could never interact with the public; and that he could work with groups of six to ten coworkers. R. 2195.

The ALJ adopted most of Andert's limitations in the RFC: she limited Phelps to simple, routine, and repetitive tasks; Phelps could not perform at a production rate pace; and he would have no interaction with the public. R. 2188. But the ALJ gave little weight to Andert's opinion that Phelps had marked limitations in social functioning and could only work around groups

14

of six to ten coworkers because it was inconsistent with a lack of interpersonal conflicts in Phelps's work history and his ability to successfully interact with crowds. R. 2195. She concluded that Phelps had a moderate limitation in interacting with others and limited Phelps to only occasional interaction with coworkers.

Phelps contends that the ALJ made three errors in assessing Andert's opinion: (1) the ALJ "did not rely on any medical evidence" to discount his opinion, Dkt. 18, at 42; (2) the ALJ did not consider how Andert's opinion was consistent with other medical opinions in the record; and (3) the ALJ did not address that Andert's opinion was consistent with Phelps's hearing testimony.

None of these purported errors merit remand. As a threshold matter, Phelps does not identify specific limitations that the ALJ should have included in the RFC. Andert testified that Phelps may experience difficulty responding to criticism from a coworker or supervisor; Phelps had a history of being argumentative; and Phelps had lashed out at coworkers. Dkt. 18, at 41. But Phelps does not identify any specific restrictions that Andert recommended related to those difficulties that the ALJ should have adopted. Accordingly, Phelps has not shown that the ALJ's assessment of Andert's opinion entitles him to remand. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (claimant not entitled to a remand if he does not "identify medical evidence that would justify further restrictions").

If Phelps means to argue that the ALJ should have adopted Andert's opinion that Phelps could work only with six to ten coworkers, that argument fails.[4] First, the ALJ did not err by

---

[4] Phelps states that the ALJ limited Phelps to interactions with six to ten coworkers. But the record Phelps cites is from a previous decision on Phelps's application, and not from the decision on appeal in this court. Dkt. 18, at 41 (citing R.1693). The ALJ did not adopt that limitation in the decision on appeal. R. 2188.

15

discounting Andert's opinion because it was inconsistent with the record as a whole. "[W]here there are medical opinions in the record, it is up to the ALJ to evaluate them by testing those opinions against the rest of the record evidence." *Gillis v. Saul*, No. 20-cv-547, 2021 WL 1439849, at *2 (W.D. Wis. Apr. 16, 2021). The ALJ was entitled to consider whether Andert's opinion was consistent with non-medical evidence, such as Phelps's work history. The ALJ also relied on other medical opinions that are consistent with the RFC she ascribed to Phelps; specifically, she gave "fairly great weight" to the opinion of Dr. Anne-Marie Berick, Ph.D., a non-examining agency medical consultant who concluded that Phelps could cooperate effectively with coworkers in completing simple tasks. R. 2194.

Second, Phelps has not shown that the ALJ erred by failing to consider how Andert's opinion was consistent with other opinions in the record. Phelps says that Andert's opinion was consistent with the opinions of Drs. Bard, Jennings, Berick, and Lefevre. But Phelps does not explain how the opinions are consistent or identify any limitations that these medical professionals recommended that the ALJ did not adopt. The ALJ's decision shows that several medical professionals opined that Phelps may have some difficulty in interacting with others. The ALJ accounted for those difficulties when she concluded that Phelps was moderately limited in that area and restricted him to only occasional interaction with supervisors and coworkers. Phelps doesn't articulate how these opinions show that more significant restrictions are required, so he is not entitled to remand on that ground.

Third, Phelps contends that the ALJ erred because Andert's testimony aligns with Phelps's own subjective complaints. But the ALJ adequately explained why she did not fully credit Phelps's testimony about his ability to work with others: it was inconsistent with a lack of evidence that Phelps had lost work due to interpersonal conflicts. And the ALJ explained

16

that Andert's opinion about Phelps's ability to work with others was inconsistent with the record for the same reasons. Andert's opinion and Phelps's testimony are consistent with each other, but the ALJ adequately explained why both were somewhat inconsistent with the record as a whole.

On appeal, the court's task is not to reweigh the evidence that the ALJ considered. The court concludes that the ALJ adequately explained why she did not adopt some details of Andert's opinion.

ORDER

IT IS ORDERED that:

1. Plaintiff Michael Phelps's motion to supplement the record, Dkt. 16, is DENIED.

2. The decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered February 1, 2023.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge